**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**UNITED COMMUNITY BANK, INC.,**

                                        **Plaintiff,**


                        v.                                                      **1:21-CV-46**
                                                                                **(FJS/TWD)**
**DPSG ENTERPRISES, LLC***, a New York*
*limited liability company;* **PHILIP J.**
**MORACI, III,** *an individual resident of the*
*State of New York*; **and DANA E. MORACI,**
*an individual resident of the State of New York*,


                                        **Defendants.**

---

APPEARANCES                                             OF COUNSEL

**CHUHAK & TECSON, P.C.**[1]                             **EDMOND BURKE, ESQ.**
30 South Wacker Drive
Suite 2600
Chicago, Illinois 60606
Attorneys for Plaintiff

**WELTMAN & MOSKOWITZ, LLP**                             **MICHAEL L. MOSKOWITZ, ESQ.**
270 Madison Avenue
Suite 1400
New York, New York 10016
Attorneys for Plaintiff

**WHITEMAN OSTERMAN & HANNA LLP**                        **JON E. CRAIN, JR., ESQ.**
One Commerce Plaza                                       **MACKENZIE E. BRENNAN, ESQ.**
Suite 1900
Albany, New York 12210
Attorneys for Defendants


**SCULLIN, Senior Judge**

---

[1] It appears from counsel's submissions that Chuhak & Tecson, P.C. is now located at 120 S.
Riverside Plaza, Suite 1700, Chicago, Illinois 60606.  Counsel is reminded that, pursuant to this
District's Local Rules, "[a]ll attorneys of record . . . must immediately notify the Court of any
change of address."  L.R. 10(c)(2).

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**

Defendants operated a kickboxing gym located in Queensbury, New York.  *See* Dkt. No. 34-1, Defs' Response and Add'l Stmt. of Material Facts, at ¶ 2.  On June 29, 2017, Plaintiff United Community Bank, Inc. ("Plaintiff" or "UCB") made a loan to Defendant DPSG Enterprises, LLC ("Defendant DPSG") in the original principal amount of $350,000, which is evidenced by a promissory note ("the Note") that Defendant DPSG executed and delivered.  *See* Dkt. No. 33-2, Pl's Smt. of Material Facts, at ¶ 6.  The Small Business Administration ("SBA") issued the Note, through Plaintiff as an approved lender, pursuant to Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a).  *See* Dkt. No. 1-1, Note.  Pursuant to the terms of the Note, Defendant DPSG would be in default if, among other things, it did not make a payment when due or experienced adverse financial changes that would lead Plaintiff to believe that Defendant DPSG could not pay its loan.  *See id.* at ¶ 4(K); Dkt. No. 33-2 at ¶ 8.  Defendants Philip Moraci and Dana Moraci (collectively referred to as "the Moraci Defendants") also guaranteed the Note through SBA Unconditional Commercial Guaranties, in which they promised to pay all amounts due under the Note upon Plaintiff's written demand.  *See id.* at ¶¶ 9-12.

Due to the COVID-19 pandemic, former New York State Governor Andrew Cuomo issued Executive Order 202.3 on March 16, 2020, which, among other things, required all gyms and fitness centers to close until further notice.  *See* Dkt. No. 34-1 at ¶ 1.  Due to the Executive Order, Defendants were no longer able to operate in-person kickboxing classes at their kickboxing gym.  *See id.* at ¶ 2.  On March 26, 2020, Sara Zitka, UCB SBA Audit & Compliance Specialist, emailed Defendant D. Moraci stating that Plaintiff approved Defendants' loan for a three-month deferment period to "help ease the burden" of the financial effects of the

COVID-19 pandemic.  *See id.* at ¶ 4.  The next day, Congress passed the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (2020), which appropriated $17 billion to the SBA to provide financial relief and loan programs for small businesses during the COVID-19 pandemic.  *See id.* at ¶ 5.  Subsequently, on April 9, 2020, Kim McClure, UCB Vice President and Senior Portfolio Manager, emailed Defendant D. Moraci and informed her that "'[she was] receiving this email because under the CARES Act, SBA 7(a) Borrowers are relieved of any obligation to pay the principal, interest and any associated fees that are owed on a 7(a) loan in a regular servicing status for a 6-month period beginning with the first payment due on your loan after March 27, 2020.'"  *See id.* at ¶ 6. McClure then provided Defendants with two options: (1) cancel the three-month deferment and start six months of SBA payments immediately, or (2) continue the three-month deferment and start six months of SBA payments after the deferment ends.  *See id.*  Defendants chose the latter option and believed that the SBA payments would apply to their loan from July 2020 through December 2020.  *See id.* at ¶¶ 6, 9.

Plaintiff thus deferred Defendants' loan from April 2020 through June 2020.  *See id.* at ¶ 7.  It then received an SBA payment for Defendants' July 2020 payment; however, Plaintiff did not request further SBA payments for the loan.  *See* Dkt. No. 35-1, Baker Aff., at ¶ 6.  This is because, on July 20, 2020, Defendants notified Plaintiff that its business would cease operations.  *See* Dkt. No. 33-2 at ¶ 13.  Plaintiff asserts that, as a result of that notice, Defendants' loan was placed in liquidation status – meaning that it did not qualify for SBA payments – and Defendant DPSG defaulted on the Note on August 5, 2020, by failing to make the required monthly payments.  *See id.* at ¶ 14.  Defendants, to the contrary, contend that their

loan continued to be entitled to SBA relief, and they did not default under the terms of the Note on August 5, 2020, or any month thereafter.  *See* Dkt. No. 34-1 at ¶ 8.

On October 10, 2020, Plaintiff sent Defendants a Notice of Default, Demand, Acceleration, and Reservation of Rights.  *See* Dkt. No. 33-2 at ¶ 16.  Plaintiff asserts that Defendants have failed to make the required payments pursuant to the Note and Guaranties for the period of August 5, 2020, and every subsequent month thereafter.  *See id.* at ¶ 17.  As such, Plaintiff filed its complaint in this action on January 14, 2021, alleging three causes of action for breach of contract and one claim of unjust enrichment.  *See* Dkt. No. 1.  In their Answer, Defendants assert the following eight affirmative defenses: (1) failure to state a claim upon which relief can be granted; (2) laches, waiver and/or estoppel; (3) Plaintiff breached the relevant contracts and agreements, including but not limited to its improper default notice and attempt to accelerate alleged loan payments despite lack of any breach by Defendants; (4) Defendants did not default in August of 2020; (5) the complaint is barred by the CARES Act; (6) the complaint is barred by documentary evidence; (7) unclean hands; and (8) the complaint is barred by Plaintiff's failure to comply with the rules and regulations governing SBA loans. *See* Dkt. No. 8.  Pending before the Court is Plaintiff's motion for summary judgment.  *See* Dkt. No. 33.  Defendants oppose Plaintiff's motion.  *See* Dkt. No. 34.

## II. DISCUSSION

### A.  Summary judgment standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving

party bears the burden of showing that no genuine issue of material fact exists.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The movant may satisfy this burden "by pointing out the absence of evidence to support the non-movant's claims."  *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)).

Once the movant meets this initial burden, the non-moving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23, 106 S. Ct. 2548; *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997)).  Specifically, the moving party must cite to "particular parts of materials in the record" or show "that the materials cited [by the non-movant] do not establish the absence or presence of a genuine dispute" as to any material fact.  Fed. R. Civ. P. 56(c)(1)(A)-(B).  The party opposing a motion for summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico*, 132 F.3d at 149) (other citation omitted), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citations omitted).  "Rather, the nonmoving party must present 'significant probative evidence tending to support the complaint.'"  *Smith v. Menifee*, No. 00 Civ. 2521 (DC), 2002 U.S. Dist. LEXIS 4943, *9 (S.D.N.Y. Mar. 26, 2002) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)).

**B.  Whether Plaintiff is entitled to summary judgment in its favor**

"To establish a *prima facie* case of default on a promissory note under New York law, a plaintiff must provide proof of a valid note and of defendant's failure, despite proper demand, to make payment." *Hack v. Stang*, No. 13-cv-5713 (AJN), 2015 U.S. Dist. LEXIS 116341, *5 (S.D.N.Y. Sept. 1, 2015) (citations omitted).  In this case, there is no dispute that Defendant DPSG and Plaintiff executed a valid Note and that the Moraci Defendants executed valid Guaranties with Plaintiff to pay that Note if Defendant DPSG defaulted.  *See* Dkt. Nos. 1-1, 1-2, 1-3.  There is also no dispute that Plaintiff sent Defendants a Notice of Default, which included an acceleration of the total loan and a demand for payment, on October 10, 2020.  *See* Dkt. No. 1-4.  Furthermore, it appears that there is no dispute that Defendants did not make a payment on the loan on August 5, 2020.

Plaintiff's internal loan history receipt shows that Defendant DPSG made regular monthly payments on the loan through March 2020.  *See* Dkt. No. 35-4 at 3.  There were no payments made in April, May, or June of 2020, and one payment on July 5, 2020.  *See id.*  This is consistent with the undisputed facts that Defendants received a deferment on their loan for three months, and the SBA paid the loan in July 2020 pursuant to Section 1112 of the CARES Act.  The receipt only shows one payment after July 2020, which was a $500.00 principal payment on November 30, 2020, and was significantly less than the regular payment of more than $4,000.00.  *See id.*  Based on this undisputed evidence, the Court finds that Plaintiff has met its prima facie burden of showing that Defendants defaulted on the Note.  Nonetheless, Defendants have attempted to raise a genuine issue of material fact as to whether they were required to make payments beginning in August of 2020, or if their loan was eligible for six months of SBA payments under the CARES Act at that time.

- 6 -

As relevant here, under the CARES Act, the SBA promised to "pay the principal, interest, and any associated fees that are owed on a covered loan in a regular servicing status . . . (B) with respect to a covered loan made before the date of enactment of this Act and not on deferment, for the 6-month period beginning with the next payment due on the covered loan after the deferment period[.]"  CARES Act, Pub. L. No. 116-136, § 1112(c)(1)(B) (2020).  A "covered loan" under this Act includes loans guaranteed by Section 7(a) of the Small Business Act, *see id.* at § 1112(a)(1)(A); and the parties agree that Defendants' Note with Plaintiff qualified as a "covered loan."  With respect to whether a loan is in "regular servicing status," the SBA guidelines provide the following:

A loan in "regular servicing status":

    a.  Includes any loan that has been moved from "approval" status (governed by SOP 50 10) to "regular servicing" status, which occurs when the loan has been closed and the final loan disbursement has been made . . . ;

    b.  Does not include any loan that has been moved from "regular servicing" into "liquidation" status, or any loan that should have been moved pursuant to SBA Loan Program Requirements from "regular servicing" into "liquidation" status prior to the first or next payment due date covered by Section 1112.  If the Lender receives a payment under Section 1112 for a loan that the Lender failed to move into liquidation status as required by SBA Loan Program Requirements, the Lender must immediately notify SBA that it has placed the loan in liquidation status and immediately return the payment. A Borrower that is granted a deferment before the payments begin under Section 1112 will not be removed from regular servicing status for failing to make any payments required by a catch-up plan; and

    c.  generally, should not include any loan that is more than 120 days past due (as counted back from the first payment due date covered under section 1112).

*See* Small Bus. Admin., Guidance on the Implementation of the Extension of the Section 1112 Debt Relief Program for the 7(a) and 504 Loan Programs, as Authorized by Section 325 of the

Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Jan. 19, 2021), https://www.sba.gov/sites/default/files/2021-01/Procedural%20Notice%205000-20079%207a%20and%20504%20Section%201112%20Payment%20Extension-508.pdf.

Defendants contend that their loan was in "regular servicing status" because Plaintiff fully disbursed the loan to them prior to September 27, 2020, and their loan was "never moved into 'liquidation status' nor was it over 120 days past due, counted from the first payment due date covered under Section 1112." *See* Dkt. No. 34 at 10.  Plaintiff argues, however, that Defendants defaulted on their loan, thus moving it into "liquidation status," after they informed Plaintiff that they were permanently closing the kickboxing gym. *See* Dkt. No. 35 at 4.

To support its position, Plaintiff attached an affidavit from Raphael Baker, a UCB SBA Workout Officer, in which he attested that adverse changes in financial conditions or business operations constitute a default of the Note.  *See* Dkt. No. 35-1 at ¶ 17 (citation omitted). Specifically, the Note provides that a "Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating company . . . [h]as any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note[.]"  *See* Dkt. No. 1-1 at ¶ 4(K).  The parties do not dispute that this provision in the Note or argue that it is ambiguous or unenforceable. Furthermore, they do not dispute that Defendants notified Plaintiff as early as July 20, 2020, that they permanently closed the kickboxing gym on July 3, 2020, and the Moraci Defendants moved to Florida for work.  *See* Dkt. Nos. 35-5, 35-6.  Defendants indicated that they notified their landlord that they would not be returning and emptied out the space.  *See* Dkt. No. 35-6. They also notified Plaintiff that, after their deferment and SBA payments, "the next payment would be due the month of January 2021, yet [Defendants] would be unable to make that payment." *See id.*  Plaintiff further confirmed the kickboxing gym's closure by inspecting the

premises where it was located and finding that it was empty and available for lease. *See* Dkt. No. 35-7.

The Court finds that Defendants thus notified Plaintiff of an adverse change in financial conditions, which would lead Plaintiff to believe that Defendants may not be able to pay the Note. As such, the Court concludes that Defendant DPSG defaulted on the Note at that time. Having defaulted on the Note, Plaintiff was required, pursuant to the CARES Act and the SBA's guidance, to move the loan into "liquidation status," which made the loan ineligible for SBA payments. Since Defendants' loan was, by law, ineligible for SBA payments, after they notified Plaintiff in July 2020 of the gym's permanent closure, Defendants were required, pursuant to the terms of the Note, to make the next required payment in August 2020. Having failed to make that payment in August of 2020 or any full payment thereafter, Defendants failed to cure the default on the Note and their Guaranties. Accordingly, the Court finds that Defendants have not raised a genuine issue of material fact as to whether their loan was eligible for six months of SBA payments to rebut Plaintiff's prima facie case of entitlement to summary judgment.

Finally, the Court must consider Defendants' affirmative defenses to determine whether they raise issues of material fact. Several of Defendants' affirmative defenses rely on their argument, discussed above, that they did not default on the Note and Guaranties in August of 2020 because the loan was eligible for six months of SBA payments pursuant to the CARES Act. *See generally* Dkt. No. 8. Thus, for the same reasons addressed above, the Court dismisses Defendants' following affirmative defenses: (i) first defense that Plaintiff failed to state a claim upon which relief can be granted; (ii) third defense that Plaintiff breached the Note and Guaranties by attempting to accelerate the loan payment despite Defendants' lack of breach; (iii) fourth defense that Defendants did not default on the Note in August of 2020; (iv) fifth

defense that the complaint is barred by the CARES Act; (v) sixth defense that the complaint is

barred by documentary evidence; and (vi) eighth defense that the complaint is barred by

Plaintiff's failure to comply with the rules and regulations governing SBA loans.  Defendants

further admit in their memorandum in opposition to Plaintiff's motion for summary judgment

that their second affirmative defense – insofar as it relies on the defenses of laches and waiver –

and its seventh affirmative defense – unclean hands – are not viable.  *See* Dkt. No. 34 at 13.

Thus, the only remaining affirmative defense that the Court must address is Defendants' defense

of equitable estoppel.

"Equitable estoppel applies 'where the enforcement of the rights of one party would

work an injustice upon the other party due to the latter's justifiable reliance upon the former's

words or conduct.'"  *Bass v. Syracuse Univ.*, No. 5:19-cv-566 (TJM/ATB), 2020 U.S. Dist.

LEXIS 152607, *17 (N.D.N.Y. Aug. 24, 2020) (McAvoy, S.J.) (quoting *Kosakow v. New*

*Rochelle Radiology Associates, PC*, 274 F.3d 706, 725 (2d Cir. 2001)).  "The party alleging

equitable estoppel must demonstrate:

> '(1) An act constituting a concealment of facts or
> misrepresentation; (2) An intention or expectation that such acts
> will be relied upon; (3) Actual or constructive knowledge of the
> true facts by the wrongdoers; (4) Reliance upon the
> misrepresentation which causes the innocent party to change its
> position to its substantial detriment.'"

*Gaia House Mezz LLC v. State St. Bank & Trust Co.*, 720 F.3d 84, 90 (2d Cir. 2013)
(quoting *Gen. Elec. Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994)).

Generally, "a party's silence does not give rise to a claim of equitable estoppel when the

party has no duty to speak."  *Id.* (citations omitted).  In this case, Plaintiff was silent in that it

did not inform Defendants that closure of the gym constituted a default on Defendants' loan,

thus making it ineligible for SBA payments.  However, where a party to a business transaction

"has made a partial or ambiguous statement," that party has a duty to speak "on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth[.]"  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Junius Constr. Corp. v. Cohen*, 257 N.Y. 393, 400, 178 N.E. 672 (1931) (Cardozo, J.)).

In this case, Defendants assert that they relied on Ms. McClure's representation that they were not required to pay their outstanding loan balance for a nine-month period; and, in response, Defendants expended substantial sums to attempt to keep the kickboxing gym open. *See* Dkt. No. 34 at 13.  Ms. McClure notified Defendants on April 9, 2020, that they were eligible and would receive six months of SBA payments after their three-month deferment ended.  *See* Dkt. No. 34-4 at 2.  Looking at the evidence in the light most favorable to Defendants, it appears that Ms. McClure expected Defendants to rely on that information, and they would not make any payments until January of 2021.

In April 2020, when Ms. McClure notified Defendants of their options, Defendants had not yet permanently closed the kickboxing gym, nor had they notified Plaintiff of their intention to do so.  Thus, at that time, Ms. McClure accurately informed Defendants that they were eligible for the SBA payments, and Plaintiff received one of those SBA payments in July 2020. However, it appears that Plaintiff concealed facts or made a material omission in that Ms. McClure did not explain to Defendants that the SBA payments would no longer apply if they closed their business or otherwise defaulted on their loan agreements.

In Defendant D. Moraci's affidavit, she explained that, on October 10, 2020, Defendants "received an alarming letter from UCB stating that [they] were in default" under the terms of the loan documents, and Plaintiff also demanded payment and accelerated the full amount due. *See* Dkt. No. 34-2 at ¶ 13.  Defendant D. Moraci indicated that she was surprised by the letter

and did not understand why the loan would be in default "when Ms. McClure informed [her] that the SBA would make any loan payments coming due under the terms of the Loan Documents for six-months following [the] Loan's deferment period." *See id.* at ¶ 14.  In considering this affidavit, the Court interprets Defendants' argument as additionally contending that Plaintiff concealed facts or made a material omission in that it did not notify Defendants that the loan was in default for more than two months after the default occurred.

Plaintiff may not have had a "duty to speak" initially – which could overcome the defense of equitable estoppel – because the Note provided that an adverse change in financial condition that materially affected the borrower's ability to pay constituted a default.  However, once Plaintiff spoke and confirmed to Defendants that they would receive a three-month deferment from April 2020 through June 2020, and then they would receive six months of SBA payments from July 2020 through December 2020, Plaintiff may have had a duty to Defendants to provide it with the whole truth as "a party cannot give only half the truth[.]"  *Brass*, 987 F.2d at 150 (citation omitted).  The Court therefore finds that Defendants have raised a question of fact as to whether Plaintiff had a duty to further notify Defendants that they would not receive the six months of SBA payments if their loan went into liquidated status because they closed their business.  Furthermore, even if Plaintiff did not need to address this issue in April 2020, the Court finds that Defendants have raised a question of fact as to whether Plaintiff had a duty to notify Defendants in July 2020, when they closed their business, that SBA payments would no longer apply, because Plaintiff knew – based on Defendants' July 2020 letter – that Defendants clearly expected the payments to continue through December 2020.  If, at trial, Defendants satisfy their burden of establishing that Plaintiff failed to meet this duty, then Defendants may show that the affirmative defense of equitable estoppel applies to this case to

ultimately demonstrate that they did not breach the loan agreement.  Accordingly, the Court

concludes that summary judgment is inappropriate.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment, *see* Dkt. No. 33, is **DENIED**;

and the Court further

**ORDERS** that Defendants' affirmative defenses, not including their defense of equitable

estoppel, are **DISMISSED**; and the Court further

**ORDERS** that the trial of this action shall commence at **10:00 a.m. on August 21,**

**2022,** in Albany, New York.  The Court will issue a separate Final Pretrial Scheduling Order,

setting forth the deadlines for filing pretrial submissions, including motions *in limine*, at a later

date.

**IT IS SO ORDERED.**

Dated:  December 22, 2022
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge